UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JACQUELINE PIERCE

V.                                                          D.N.  3:19 cv 163

WELLS FARGO CLEARING
SERVICES, LLC and
MATTHEW GORDON                          FEBRUARY 4, 2019

**COMPLAINT AND JURY DEMAND**

**I.   Parties**

1. The Plaintiff, Jacqueline Pierce is a resident of New Britain, Connecticut.

2. The Defendant Wells Fargo Clearing Services, LLC ("Wells Fargo") is a banking Corporation doing business in New Jersey and Connecticut with a headquarters at One North Jefferson Avenue, St. Louis, Missouri and employs in excess of 500 employees.  It has a business address at 358 Market Street, Saddle Brook, New Jersey 07663.

3. The Defendant Matthew Gordon ("Gordon") is an employee of Wells Fargo working in Saddle Brook, New Jersey and Lodi, New Jersey.  He is a financial advisor also known as an "Investment Adviser Representative".  His Central Registration Depository ("CRD") number is 4286268.

## II. Jurisdiction, Venue and Equitable Relief

4. This action against Defendants Wells Fargo and Gordon arises under the Section 10(b) of the Securities Exchange Act [15 U.S.C. Section 78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. Section 240.10b-5(a)] and State of Connecticut common law.

5. Venue is proper in this District and Division because a substantial part of the events giving rise to Plaintiff's claim arose here and one or more of the breaches of which Plaintiff complains occurred here.

## III. Statement of Facts:

6. The Plaintiff is a 60 year old single female.

7. Wells Fargo is a financial institution that employs over 500 employees.

8. The Plaintiff first met Investment Adviser Matthew Gordon in the fall of 2009. At the time the Plaintiff was living at 272 Marlboro Road, Wood Ridge, New Jersey.

9. In 2009, the Plaintiff deposited $500,000 with Defendant Wells Fargo pursuant to a written agreement under which Defendant Gordon became the Plaintiff's Investment Adviser.

10. In 2017, Plaintiff moved to New Britain, Connecticut and continued to use Defendant Gordon as an investment adviser.

11. On April 28, 2010, the Plaintiff, on Defendant Gordon's advice opened a AXA annuity with $100,000.00. At that time, Defendant Gordon represented to the Plaintiff that the AXA

annuity would most likely provide $1,000 to $1,200 guaranteed monthly income. In 2017, the Plaintiff determined that the AXA annuity would at most provide $500 to $600 per month.

12. Defendant Gordon pestered the Plaintiff incessantly about a wealthy friend of the Plaintiff's who Defendant Gordon wanted as a client. He even went so far as to ask the Plaintiff to identify the location of her friend's house using google maps so that he could locate her and attempt to obtain her as a client.

13. Defendant Gordon would often show the Plaintiff naked pictures of some of his female clients and naked pictures of his wife.

14. Defendant Gordon asked the Plaintiff to help him find women online.

15. Defendant Gordon told the Plaintiff that he often went to massage parlors to have sex and that his wife was ok with him visiting massage parlors to have sex.

16. In or around 2013, Defendant Gordon screamed at the Plaintiff in a public parking lot telling her she had "screwed up all HIS financial planning for (her)" and that he didn't want her as a client anymore. The Plaintiff started to cry and pleaded with him not to abandon her.

17. In 2014, at a time when the Plaintiff was selling her residence at 272 Marlboro Road, Wood Ridge, New Jersey, Defendant Gordon, without solicitation, offered to do a yard clean up for her for $1,000 in an attempt to take advantage of her.

18. In 2015, Defendant Gordon advised that Plaintiff that she should extend a variable rate loan she had with Defendant Wells Fargo which had a credit limit of $131,000.00 at an intial interest rate of 4.75%.  Despite that fact that extending the loan was not in the best financial interest of the Plaintiff, Defendant Gordon stated to her "Wells Fargo will keep extending it and don't worry about repaying it.  They LOVE customers that keep extending their loans."  By the fall of 2018, the interest rate on the loan was 6.5% but Defendant Gordon continued to encourage the Plaintiff to extend the loan.  Defendant Gordon was aware that it would be difficult for the Plaintiff to repay the loan given her circumstances including not having a job and having expenses related to her children.

19. In 2015, Defendant Gordon again threated to drop the Plaintiff as a client for not listening to his advice.

20. Between 2014 and 2018, Defendant Gordon, on numerous occasions advised the Plaintiff to rent one of his apartments despite the fact that it would have been much too expensive given her financial circumstances and the fact that she did not have a job.  Defendant Gordon was aware that the apartment would be too expensive for the Plaintiff and in fact said to the Plaintiff: "You will be losing money, but you'll be in a nice place."

21. In the summer of 2018, the Plaintiff asked Defendant Gordon for cash from one of her Wells Fargo accounts and Defendant Gordon screamed at the Plaintiff that she had "screwed up"

and 'messed up all his hard work". Defendant Gordon told the Plaintiff "Get rid of Robert (Plaintiff's boyfriend) and John (Plaintiff's son), take Sean (Plaintiff's son) and go somewhere and you'll have to live on dollar store foods for the rest of your life."

22. In 2017 and 2018, Defendant Gordon would not allow the Plaintiff to take funds out of her accounts unless she explained to him what she needed the money for.

23. In 2017 and 2018, when the Plaintiff asked for money transfers it would take Defendant Gordon at least a week and sometimes two weeks to make the transfer.

24. In the fall of 2018, Defendant Gordon offered the Plaintiff $10,000 of his own money if she would "get rid of" Robert (the Plaintiff's boyfriend).

25. In November, 2018, the Plaintiff made the decision to move her assets to a new financial advisor given Defendant Gordon's inappropriate and illegal behavior.

26. On December 12, 2018, the Plaintiff met with advisors from Merrill Lynch Wealth Management ("Merrill Lynch") and via a conference call advised Defendant Gordon that she was moving her assets to Merrill Lynch.

27. During the course of the conference call, Defendant Gordon's supervisor Steven Schofield joined the conference call and rudely demanded to know who was calling and what it was about. Plaintiff explained that she wished to move her assets from Wells Fargo to Merrill Lynch.

28. During the course of the conference call, the Plaintiff asked Defendant Gordon to pay off the variable rate loan and put $10,000.00 into her checking account.  Those requests were not honored by Defendant Gordon and Defendant Wells Fargo until December 20, 2018.

29. Plaintiff has requested that all her assets be moved from Wells Fargo to Merrill Lynch.

30. During the course of her relationship with Defendant Gordon, Defendant Gordon mismanaged her assets causing them to deplete.

**IV. Count One: Violation of Section 10(b) of the Securities Exchange Act [15 U.S.C. Section 78j(b) and Rules 10b-5(a) and (c) thereunder [17 C.F.R. Section 240.10b-5(a) as to Defendant Gordon**:

31. Defendant Gordon, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce or of the mails, or of the facilities of a national securities exchange, knowingly or recklessly (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

32. By reason of the foregoing, Defendant Gordon directly or indirectly, violated Section 10(b) of the Securities Exchange Act [15 U.S.C. Section 78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. Section 240.10b-5(a) and (c)].

### V.  Count Two: Breach of Fiduciary Duty as to Defendant Gordon:

33. By virtue of Defendant Gordon's position as Investment Adviser Representative for the Plaintiff, a fiduciary relationship existed between Defendant Gordon and the Plaintiff which gave rise to a duty of loyalty on the part of Defendant Gordon to the Plaintiff.

34. As Investment Adviser Representative for the Plaintiff, Defendant Gordon had an obligation to act in the best interests of the Plaintiff and Defendant Gordon had an obligation to act in good faith in any manner relating to the Plaintiff.

35. Defendant Gordon advanced his own interests to the detriment of the Plaintiff by: a) using the Plaintiff to attempt to obtain one of the Plaintiff's wealthy friends as a client; b) using the Plaintiff to attempt connect with women for sexual relationships; c) attempting to take advantage of the Plaintiff by requesting $1,000 to clean her yard; d) encouraging her to extend her high interest rate loan when it was not in her financial interest to do so; and e) encouraging her to rent one of his apartments when it was not in her financial interest to do so.

36. As a result of the Defendant's breaches of his fiduciary duty, the Plaintiff has sustained damages that were proximately caused by Defendant Gordon's breach of his fiduciary duties. The damages include but are not limited to emotional distress related to Defendant Gordon's mental abuse and use of the Plaintiff to support his own interests to the Plaintiff's detriment and economic damage related to the payment of excessive interest.

## VI. Count Three: Violations of the Connecticut Unfair Trade Practices Act, Connecticut General Statutes Sections 42-110b(a) et seq. as to Defendant Gordon:

37. In abusing his relationship with the Plaintiff and breaching his fiduciary duty to her, Defendant Gordon engaged in unfair methods of competition and unfair and deceptive acts in the conduct of trade and commerce in violation of the Connecticut Unfair Trade Practices Act, Connecticut General Statutes Sections 42-100b(a) et seq.

38. Defendant Gordons actions were immoral, unethical, oppressive, unscrupulous, offended public policy and caused the damages to the Plaintiff including but not limited to emotional distress and payment of excessive interest.

## VII. Count Four: Negligent Misrepresentation as to Defendant Gordon:

39. Defendant Gordon knew or should have known that his representation to the Plaintiff that the AXA annuity would provide $1,000 to $1,200 monthly income was false and that it would only provide $500 to $600 per month.
40. The Plaintiff reasonably relied upon the representation because it was being provided by Defendant Gordon who was her investment adviser.
41. The Plaintiff has incurred damages by relying on the Defendant's false representation and allocating assets to the AXA annuity.

### VIII.   Count Five: Intentional Misrepresentation as to Defendant Gordon:

42. Defendant Gordon knowingly made a false representation to the Plaintiff that AXA annuity would provide $1,000 to $1,200 monthly income knowing that it would only provide $500 to $600 per month.
43. Defendant Gordon made the representation to the Plaintiff to induce her to purchase the AXA annuity to his own benefit.
44. The Plaintiff reasonably relied upon the representation because it was being provided by Defendant Gordon who was her investment adviser and purchased the AXA annuity to her detriment.

45. The Plaintiff incurred damages by purchasing the AXA annuity expecting that it would provide a monthly benefit of $1,000 to $1,200.

**IX: Count Six: Negligent Infliction of Emotional Distress as to Defendant Gordon**:

46. Defendant Gordon knew or should have know that his conduct including falsely claiming that the AXA annuity he was offering would provide a monthly benefit of $1,000 to $1,200, pestering her about her wealthy friend so that he could obtain her as a client, showing him naked pictures of his wife and other women, asking her to help him find women, yelling at the Plaintiff, belittling the Plaintiff, offering to clean her yard for $1,000, encouraging her to extend her loan to her financial detriment, threatening to drop her as a client, encouraging her to rent his apartment, telling her to get rid of her boyfriend and son, making her explain why she needed money, offering her $10,000 to get rid of her boyfriend, making her wait for cash transfers and mismanaging her assets involved an unreasonable risk of causing emotional distress that might result in bodily harm.
47. Plaintiff did in fact suffer severe emotional distress and bodily harm.
48. Plaintiff's emotional distress was foreseeable by Defendant Gordon.
49. The Defendant's conduct was the cause of the Plaintiff's severe emotional distress and bodily harm and the Plaintiff suffered substantial damages as a result.

**X: Count Seven: Negligent Supervision as to Wells Fargo**:

50. Wells Fargo knew or should have known that Defendant Gordon had the propensity to engage in such inappropriate and illegal behavior.

51. In fact, Wells Fargo was aware of at least two customer complaints made about Defendant Gordon and reported by FINRA, one dated November 1, 2006 and one dated January 20, 2009.

52. Despite Wells Fargo's knowledge that Defendant Gordon had such a propensity to engage in inappropriate and illegal behavior, it kept him on as an employee and provided him free reign to mistreat and abuse the Plaintiff.

53. Because of Wells Fargo's negligent supervision of Defendant Gordon, Plaintiff suffered damages.

**XI. Damages/Prayer for Relief**:

55. As a result of Matthew Gordon and Wells Fargo's treatment of the Plaintiff, the Plaintiff has suffered financial and emotionally.

56. As to all Counts, the Plaintiff prays for the following:

   a. Compensatory Damages;

b.  Emotional Distress Damages;

c.  Economic Damages;

d.  Equitable Damages;

e. Civil monetary penalties under the Securities and Exchange Act;

f.  Attorney's Fees and Costs;

g. Punitive Damages;

h. All Other Damages Available.

THE PLAINTIFF:

By:___/s/ Daniel H. Kryzanski ct 15620
      Daniel H. Kryzanski, Esq.
      Law Offices of Daniel H. Kryzanski
      30 Ferry Blvd. #2
      Stratford, CT 06615
      Phone: (203) 380-1384
      Fax: (203) 380-1598
      Bar: CT 15620